[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 99-10286
Non-Argument Calendar

_____

D.C. Docket No. 97-00923-CR-UUB

UNITED STATES OF AMERICA,

Plaintiff-Appellee-
Cross-Appellant,

versus

PIERRE ANDRE COVER,

Defendant-Appellant-
Cross-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

**(January 4, 2000)**

Before ANDERSON, Chief Judge, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

Pierre Andre Cover, a federal prisoner, appeals his 195-month sentence for bank robbery, 18 U.S.C. § 2113 (a), (d) and for using a firearm in connection with a crime of violence, 18 U.S.C. § 924(c). Cover raises three arguments. First, he argues that he should not have received a U.S.S.G. § 2B3.1(b)(2)(C) enhancement for brandishing, displaying, or possessing a firearm during the robbery when the court sentenced him to a consecutive 60-month sentence for possessing a firearm. Second, he argues that he should not have received U.S.S.G. §§ 2B3.1(b)(4)(A), (b)(5) enhancements for a carjacking and kidnaping by an unidentified co-conspirator because he could not reasonably foresee these events. Third, he argues that he should not have received a U.S.S.G. § 2B3.1(b)(7)(C) enhancement for the unknown quantity of money that was in vault at the time of the robbery. The government appeals the district court's refusal to impose a U.S.S.G. § 2B3.1(b)(2)(B) six-level enhancement for "otherwise using" a firearm during the robbery on the ground that the actions of Cover's codefendants constituted more than merely brandishing or displaying a firearm. We AFFIRM Cover's sentence on all issues other than the § 2B3.1(b)(2)(C) enhancement. We REVERSE Cover's sentence as to the § 2B3.1(b)(2)(C) enhancement and REMAND for application of the § 2B3.1(b)(2)(B) enhancement for otherwise use of a firearm.

## I. Background

On December 2, 1997, Cover and two accomplices (collectively "co-conspirators"), armed with firearms, took control of a NationsBank ("the bank") in Miami Beach, Florida, and held captive fifteen people (customers and employees) by force and threats of violence. See Presentence Investigation Report ("PSI") ¶¶ 3-4. The three co-conspirators each played different roles in the robbery, with Cover forcing the tellers to empty their drawers into a bag and to open the vault, co-defendant Andre Wilson ("Wilson") acting as a lookout, and an unidentified accomplice guarding the victims, who were forced at gunpoint to lie on the floor. See PSI ¶ 4. Metro-Dade Police officers, responding to a silent hold-up alarm, came to the bank, where they witnessed Cover and Wilson attempting to exit the bank through the front door; Cover and Wilson were apprehended at the scene after they reentered the bank and exited through a side door. See PSI ¶ 5. The unidentified co-conspirator escaped by carjacking and kidnaping a motorist outside the bank; the co-conspirator held the motorist at gunpoint. See PSI ¶ 6. The motorist was released unharmed. See PSI ¶ 10. The police recovered the car and bag of money, containing $12,740, taken by the co-conspirators. See PSI ¶ 10.

Cover pled guilty, without a plea agreement, to bank robbery (Count One) and to using and carrying a firearm during and in relation to a crime of violence (Count Two). See PSI § 1. The probation officer recommended that Cover be given an offense level of 32 for Count One, with a base level of 20, see U.S.S.G. §

2B3.1(a); a two-level enhancement, because "the property of a financial institution was taken," U.S.S.G. § 2B3.1(b)(1); a five-level enhancement, because "a firearm was brandished, displayed, or possessed," U.S.S.G. § 2B3.1(b)(2)(C); a four-level enhancement, because a "person was abducted . . . to facilitate escape," U.S.S.G. § 2B3.1(b)(4)(A); a two-level enhancement, because "the offense involved carjacking," U.S.S.G. § 2B3.1(b)(5); and a two-level enhancement, because the loss was more than $50,000 but not more than $250,000, see U.S.S.G. § 2B3.1(b)(7)(C); a two-level downward adjustment, for acceptance of responsibility, see U.S.S.G. § 3E1.1(a); and a one-level downward adjustment, for timely notification of intent to enter a plea of guilty, see U.S.S.G. § 3E1.1(b)(2). See PSI ¶¶ 13-25. As to Count Two, § 924(c) and U.S.S.G. § 2K2.4(a) mandate that Cover be given a sentence of "five years consecutive to any other term of imprisonment imposed." In an addendum to the PSI, the probation officer rejected objections that Cover had made to the PSI, including his objections to the § 2B3.1(b)(7) enhancement for the amount of the "loss," and to the §§ 2B3.1(b)(4)(A) and 2B3.1(b)(5) enhancements for carjacking and kidnaping. See Addendum to PSI at 1-3.[1]

---

[1] Cover made other objections not raised on appeal which, accordingly, we will not consider.

At Cover's sentencing hearing, the district judge addressed two objections raised by Cover. First, the district judge rejected Cover's challenge to the enhancements for carjacking and kidnaping on the ground that "it was foreseeable to [the co-conspirators] when they walked into the bank that anything could happen, including someone being abducted in order to facilitate the escape of one of them." R4-8. Second, after hearing testimony from two bank employees regarding Cover's attempts to get employees to open the bank vault and the probable amount of money in the vault, the district judge rejected Cover's challenge to the § 2B3.1(7) two-level enhancement and found "that the Government has shown by a preponderance of the evidence that there was at least $100,000 in the vault on the day of the robbery." R4-18. Cover never raised before the district court his claim that enhancement pursuant to § 2B3.1(b)(2) is inappropriate where Cover was also convicted of and sentenced for violating § 924(c).

The district judge rejected the government's objection to the recommendation that Cover's offense level be enhanced by five levels, pursuant to § 2B3.1(b)(2)(C), for brandishing or displaying a firearm. The government argued that Cover's use of his firearm amounted to more than mere brandishment or displaying and, thus, that he should have received a six-level enhancement, pursuant to § 2B3.1(b)(2)(B), for "otherwise use" of the firearm. R4-19. The

5

district judge said that she was "uncomfortable applying this additional one-point enhancement" and that she would "decline to do so in absence of a clear explanation from the Sentencing Commission as to what it intended." R4-25. Thus, she adopted the Probation Officer's recommendation that Cover receive a total offense level of 32 for Count One. See R4-25. The guideline range for Cover, with an offense level of 32 and a criminal history category of 2, is 135 to 168 months. Because of extenuating circumstances, including several letters submitted by Cover's friends and families, the district court sentenced him to 135 months and then added the concurrent sentence of 60 months for Count Two for an overall sentence of imprisonment for 195 months, followed by three years supervised release, and a $200 assessment. See R4-33-34.

## II. Analysis

In sentencing guidelines cases, we review for clear error a district court's factual findings and review de novo the district court's application of law to those facts. See United States v. Jones, 32 F.3d 1512, 1517 (11th Cir. 1994). We review for plain error rulings to which there was no objection at the district court. See United States v. Antonietti, 86 F.3d 206, 208-09 (11th Cir. 1996).

Because the challenges raised by Cover and the government as to the § 2B3.1(b)(2) enhancement are related, we address Cover's other two challenges separately and then discuss the § 2B3.1(b)(2) challenges together.

6

**A.    Sections 2B3.1(4)(A) and 2B3.1(5) enhancements for carjacking and kidnaping**

Cover argues that his sentence should not be enhanced under §§ 2B3.1(4)(A) and 2B3.1(5) because it was not reasonably foreseeable that his unidentified co-conspirator would escape by carjacking and kidnaping a motorist.  Under U.S.S.G. § 1B1.3(a)(1)(B), a co-conspirator's sentence

> shall be determined on the basis of . . . all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

If the unidentified co-conspirator's[2] carjacking and kidnaping of a motorist to avoid capture by the police were "reasonably foreseeable," then the enhancements were appropriate.  Whether a co-conspirator's act was reasonably foreseeable is a factual finding reviewed for clear error.  See United States v. Pessefall, 27 F.3d 511, 515 (11th Cir. 1994); United States v. Medina, 74 F.3d 413, 416 (2d Cir. 1996) ("The factual findings that bear upon reasonable foreseeability are reviewed by this Court for clear error.").  The government must show by a preponderance of the evidence that the carjacking and abduction were reasonably foreseeable.  See United States v. Gallo, — F.3d —, —, No. 98-4381, slip op. (11th Cir. Nov. 17, 1999) (discussing § 1B3.1 in relation to § 2D1.1(b)(2) firearm enhancement).

_____

[2]  Cover does not dispute the claim that the abductor/carjacker was his co-conspirator.

We find that the district court did not clearly err in finding that the co-conspirator's carjacking and abduction of the motorist were reasonably foreseeable. As the district judge stated in the sentencing hearing:

> A person who goes into a bank robbery with firearms and with other people intending to do whatever is necessary to effect that robbery, as the three of them showed themselves to be during the robbery, . . . I would say that pretty much anything that happens under those circumstances is foreseeable to the defendants, including Mr. Cover. . . . I think it was foreseeable to them when they walked into the bank that anything could happen, including someone being abducted in order to facilitate the escape of one of them.

R4-8 (finding that enhancement for abduction was proper); see also id. (applying same reasoning to find that enhancement for carjacking was proper). This reasoning is sound and takes into account the circumstances surrounding the carjacking and abduction, including the actions taken by the co-conspirators before the arrival of the police triggered the unidentified co-conspirator's escape. See id. Cover's argument that his co-conspirator's decision to escape the bank by carjacking and abducting a motorist was not foreseeable because Cover had brought his car to the bank to be used as the getaway car is unavailing. "Reasonably foreseeable" has never been limited to actions that were expressly agreed to by the co-conspirators. Rather, we have looked to the rationale found in Pinkerton v. United States to find that an act is reasonably foreseeable if it is "'a necessary or natural consequence of the unlawful agreement.'" United States v.

Martinez, 924 F.2d 209, 210 n.1 (11th Cir. 1991) (quoting Pinkerton v. United States, 328 U.S. 640, 648, 66 S. Ct. 1180, 1184, 90 L.Ed 1489 (1946)); see also Gallo, — F.3d at —, No. 98-4381, slip op. (noting with approval Martinez's discussion of the Pinkerton definition of "reasonably foreseeable"). The fact that the co-conspirators agreed to a plan that did not involve carjacking or abduction does not preclude the district court from finding that carjacking and abduction were reasonably foreseeable if "the original plan went awry" and the police became involved. United States v. Molina, 106 F.3d 1118, 1121-22 (2d Cir. 1997) (holding that district court erred in finding that shooting was not reasonable foreseeable merely because the co-conspirators had agreed not to discharge their firearms: "Even if Molina hoped that the original plan would be carried out and that no shooting would occur, it was nonetheless reasonable for him to foresee that, in an encounter between armed robbers and armed guards protecting an armored car, a shooting was likely to occur."). We affirm the §§ 2B3.1(4)(A) and 2B3.1(5) enhancements.

**B.      Section 2B3.1(7)(C) enhancement for amount of money in bank vault**

Section 2B3.1(7) enhancements address the issue of amount of loss incurred by the victim (here, the bank); § 2B3.1(7)(B) applies where the amount of loss is valued at more than $10,000 and less than $50,000, while § 2B3.1(7)(C) applies where the amount of loss is valued at more than $50,000 and less than $250,000.

9

Here, it is undisputed that the amount of loss is more than $10,000, because the bag of money taken contained more than $12,000. Cover argues that the district court erred in including an estimated $100,000 from the bank vault in the amount of loss. Valuation of loss is a factual finding reviewed for clear error. See United States v. Calhoon, 97 F.3d 518, 530 (11th Cir. 1996);[3] United States v. Johnson, 16 F.3d 166, 170 (7th Cir. 1994) ("The district court's assessment of the amount of loss is a factual finding, which we will not disturb unless it is clearly erroneous."). Cover argues that the inclusion of any money from the bank vault was error because no money was removed from it and that, even it was appropriate to include that money, the evidence as to the amount of money in the vault was too speculative.

Cover's first argument has no merit. As the commentary to U.S.S.G. § 2B1.1 makes clear, "[i]n the case of a partially completed offense . . . the offense level is to be determined in accordance with the provisions of § 2X1.1. . . ." Comment. (n.2) (1998); see also U.S.S.G. § 2B3.1, comment. (n.3) (1998) (referring to commentary to § 2B1.1 for valuation of loss). Under § 2X1.1, a defendant who partially completed an offense (i.e., only seized part of the money) will be held liable for the entire offense (i.e., the entire amount of money that the

---

[3] Calhoon addresses valuation of loss under U.S.S.G. § 2F1.1, which, like § 2B3.1, refers to the valuation of loss principles embodied in U.S.S.G. § 2B1.1 and the commentary to § 2B1.1. 97 F.3d at 530 (noting that the commentary with § 2F1.1 refers to § 2B1.1); see also U.S.S.G. § 2B3.1, comment. (n.3) (1998) ("Valuation of loss is discussed in the Commentary to § 2B1.1 . . . .").

defendant attempted to seize) if "the substantive offense was substantially completed or was interrupted or prevented on the verge of completion by the intercession of law enforcement authorities or the victim." U.S.S.G. § 2X1.1, comment. (n.4). See also Calhoon, 97 F.3d at 531 (finding that intended or attempted loss would be included in sentencing determination where, but for the interception of wrongdoing by an auditor, the defendant would have caused a determinate amount of losses); United States v. Rosa, 17 F.3d 1531, 1550-51 (2d Cir. 1994) (applying sentence for entire value of attempted offense where the defendants "had completed all the acts they believed necessary to conclude the substantive offense" and were stopped only by their arrest). The district court heard testimony showing that Cover entered the bank vault area with the teller with the key and the teller with the vault's combination. See R4-11-12; PSI ¶ 4 (identifying Cover as the defendant who entered the bank vault area). These two tellers were the only people needed to open the vault in order to take the funds inside. See R4-12. The key was about to inserted into the lock, see R4-12, to be followed by entry of the combination, when "someone yelled 'The police are here,'" which caused Cover to leave the bank vault area, see R4-11. In light of these facts, we find that the district court did not err in finding that Cover had completed all of the necessary acts to seize the funds in the bank vault and that, but for the intervention of the police, he would have successfully seized those funds.

Accordingly, it was not clear error for the district court to include the funds in the bank vault as part of the amount of loss.

Cover's second argument likewise fails. Under the sentencing guidelines, "the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information." U.S.S.G. § 2B1.1, comment. (n.3) (1998). Amount of loss must be proven by a preponderance of the evidence. See United States v. Kimmons, 965 F.2d 1001, 1011 (11th Cir. 1992), vacated on other grounds, 508 U.S. 902, 113 S. Ct. 2326, 124 L.Ed.2d 239 (1993), reinstated, 1 F.3d 1144 (11th Cir. 1993). In Kimmons, we upheld a district court's finding that the amount of loss from an attempted robbery of an armored car amounted to approximately $500,000 based on "[t]estimony from managers of [the] intended victim corporations [that] established that hundreds of thousands to millions of dollars were carried on the armored cars during the specific routes that the appellants had targeted." Id. at 1011. Similarly, in this case, the district court heard evidence from a bank manager regarding the amount in the bank vault at the beginning of the day of the robbery and regarding the estimated cash flow of that day. See R4-14-15. After giving that testimony, and being admonished not to speculate, the bank manager testified that the absolute minimum that was in the bank vault at the time of the robbery, the "no way it was below X number even if it was an unusual day" amount, R4-15, was $100,000, see R4-16. Based on this

12

testimony, the district court did not clearly err in finding that there was at least $100,000 in the bank vault at the time of the robbery.  Accordingly, we affirm the application of the § 2B3.1(7)(C) two-point enhancement.[4]

## C.    Section 2B3.1(b)(2)(C) enhancement for brandishing, displaying, or possessing a firearm

Cover and the government both challenge the district court's decision to enhance Cover's sentence pursuant to U.S.S.G. § 2B3.1(b)(2)(C).  Cover argues that any enhancement pursuant to §2B3.1(b)(2) is inappropriate in light of his conviction and sentence for violation of 18 U.S.C. § 924(c).  The government argues that the district court was correct to apply a § 2B3.1(b)(2) enhancement but that it was incorrect to apply the five-point enhancement found in § 2B3.1(b)(2)(C) for brandishing, displaying, or possessing a firearm instead of the six-point enhancement found in § 2B3.1(b)(2)(B) for "otherwise us[ing]" a firearm.  Because we reject Cover's argument but agree with the government, we reverse Cover's sentence as to the § 2B3.1(b)(2)(C) enhancement and remand to the district court for application of the § 2B3.1(b)(2)(B) enhancement.

### 1.    Cover's challenge

---

[4]  We also note that the district court need only have found that the bank vault contained approximately $37,506 to justify application of the extra point enhancement.  It is undisputed that the paper bag contained at least $12,495, see R4-14 ($12,495); PSI ¶ 8 ($12,740).  For § 2B3.1(7)(C) to apply, the amount of loss need only be greater than $50,000.  No witness, on direct or cross examination, ever stated that there was any possibility that the amount of money in the bank vault at the time of the bank robbery could have been less than $37,506.

Because Cover's challenge to his § 2B3.1(b)(2) enhancement was not raised in the district court, we review it for plain error. Antonietti, 86 F.3d at 208-09. "To find reversible error under the plain error standard, we must conclude that (1) an error occurred, (2) the error was plain, and (3) the error affected substantial rights." United States v. Mitchell, 146 F.3d 1338, 1342 (11th Cir. 1998). We will find error if it "is clear under current law'" or if "the ruling in question is clearly contrary to the law at the time of appeal." Id. at 1342-43 (quoting United States v. Olano, 507 U.S. 725, 733-34, 113 S. Ct. 1770, 1777, 123 L.Ed.2d 508 (1993); citing Johnson v. United States, 520 U.S. 461, 468, 117 S. Ct. 1544, 1549, 137 L.Ed.2d 718 (1997)).

> Under U.S.S.G. § 2K2.4, the sentencing provision applicable to § 924(c):
>
> Where a sentence under this section is imposed in conjunction with a sentence for an underlying offense, any specific offense characteristic for the possession, use, or discharge of an explosive or firearm (e.g., § 2B2.1(b)(2)(A)-(F) (Robbery)) is not to be applied in respect to the guideline for the underlying offense.

U.S.S.G. § 2K2.4, comment. (n.2) (1998). This provision prevents "double counting," see United States v. Washington, 44 F.3d 1271, 1280 (5th Cir. 1995), i.e., the application of "enhancements for the defendant's possession of the weapon, [where] punishment for possession of that weapon has been meted out in the 924(c) sentence." United States v. Rodriguez, 65 F.3d 932, 933 (11th Cir. 1995). The language from the sentencing hearing indicates that Cover's sentence was

enhanced for his own possession and use of the firearm already punished by the §

924(c) sentence. <u>See, e.g.</u>, R4-19 (discussing the government's § 2B3.1(b)(2)

objection; noting that the objection was based on Cover's actions in "brandishing a

firearm and threatening to kill someone, as the defendant did here with Claire

Langton"). To the extent that Cover's sentence was enhanced solely based on his

possession of his own use of that firearm, the district court did err. <u>See</u> <u>United</u>

<u>States v. Rodgers</u>, 981 F.2d 497, 500-01 (11th Cir. 1993).

However, we find that this error was harmless and, thus, did not affect

Cover's substantial rights because an alternative ground exists for affirming the

application of a § 2B3.1(b)(2) enhancement. <u>See</u> <u>United States v. Hernandez</u>, 160

F.3d 661, 670 (11th Cir. 1998) ("To find harmless error, we must determine that

the error did not affect the substantial rights of the parties."; finding that error in

applying upward departure based on a mere list of arrests was harmless where a

correct calculation of the defendant's criminal history category would have caused

the defendant to receive the same sentence); <u>see also</u> <u>Bonanni Ship Supply, Inc. v.</u>

<u>United States</u>, 959 F.2d 1558, 1561 (11th Cir. 1992) ("We note that this court may

affirm the district court where the judgment entered is correct on any legal ground

regardless of the grounds addressed, adopted or rejected by the district court.").

While § 2K2.4 does bar double counting, it does not bar "enhancement for a

<u>separate</u> weapons possession, such as that of a co-conspirator" where the defendant

was convicted and sentenced for his own possession or use of a firearm. Rodriguez, 65 F.3d at 933 (emphasis added); see also Kimmons, 965 F.2d at 1011 (permitting enhancement for co-conspirator's use or possession of a firearm despite conviction for violation of § 924(c)). As the Fifth Circuit noted, where the defendant and a co-conspirator are both armed, "an enhancement is entirely proper because two armed men pose a much greater threat to public safety than does one." Washington, 44 F.3d at 1281 (citing Kimmons). Here, it is undisputed that both of Cover's co-defendants possessed firearms during the robbery. Accordingly, we find that it was appropriate for the district court to apply a § 2B3.1(b)(2) enhancement.

2.    The government's challenge

The government's challenge addresses the scope of the enhancement, i.e., whether the co-conspirators merely "brandished, displayed, or possessed" their firearms or whether they "otherwise used" their firearms during the crime. U.S.S.G. §§ 2B3.1(b)(2)(B), (C). In deciding not to give the six-point enhancement for "otherwise use" of a firearm, the district court rested on a legal interpretation of § 2B3.1(b)(2)(B). See R4-25. We review de novo the district court's interpretation of the Sentencing Guidelines. See United States v. Cook, 181 F.3d 1232, 1233 (11th Cir. 1999); United States v. Orozco, 121 F.3d 628, 629 (11th Cir. 1997).

Under the Guidelines, "otherwise used" means "that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possession a firearm or other dangerous weapon," while "brandished" means ""that the weapon was pointed or waved about, or displayed in a threatening manner." U.S.S.G. § 1B1.1, comment. (n.1(g), 1(c)) (1998); see also U.S.S.G. § 2B3.1, comment. (n.1) (1998) (referring to § 1B1.1 commentary in defining "otherwise used" and "brandishing")).  In United States v. Wooden, we held that an implicit threat against a specific person which included "pointing and holding a semi-automatic weapon one-half inch from his victim's head" amounted to "otherwise use" of the firearm.  169 F.3d 674, 676-77 (11th Cir. 1999).  Judge Hill of this court, sitting by designation on the First Circuit, relied on several cases, including Wooden, to find that "it was the specific rather than the general pointing of the gun that elevated its use from mere 'brandishment' to 'otherwise used.'" United States v. LaFortune, 192 F.3d 157, 161 (1st Cir. 1999).  We agree with this definition and, like the majority of courts that have considered the question, find that the use of a firearm to make an explicit or implicit threat against a specific person constitutes "otherwise use" of the firearm.[5]  See, e.g., id. at 161-62 ("A general, or even pompous, showing of weapons, involving what one would consider an arrogant

_____

[5]  We look to cases involving other dangerous weapons because the "brandishment" and "otherwise used" is the same for firearms and dangerous weapons. See LaFortune, 192 F.3d at 161 n.11.

17

demonstration of their presence, constitutes the <u>generalized</u> warning that these weapons may be, in the future, used and not merely brandished. <u>Altering this general display</u> of weaponry by <u>specifically leveling</u> a cocked firearm <u>at the head or body of a bank teller or customer</u>, ordering them to move or be quiet according to one's direction is a cessation of 'brandishing' and the commencement of 'otherwise used.'") (emphasis added); <u>United States v. Taylor</u>, 135 F.3d 478, 483 (7th Cir. 1998) ("As for Charles's use of the gun, we conclude that poking it into Unruh's back was at least as serious as leveling a dangerous weapon <u>at someone's head</u> or pointing it <u>at a specific person</u> without any physical contact. We have already found that the latter behavior constitutes 'otherwise using' the dangerous weapon within the meaning of § 2B3.1(b)(2)(D).") (emphasis added); <u>United States v. Gilkey</u>, 118 F.3d 702, 706 (10th Cir. 1997) ("The facts of the case at bar, which include actual, physical seizing of the <u>specific</u> victim, the simultaneous pointing of the weapon <u>at the victim</u>, and the forced movement <u>of the victim</u>, indicate specific rather than general pointing of the gun. It does not matter whether the gun itself actually touched the victim."; affirming district court's enhancement for "otherwise use" of a dangerous weapon) (emphasis added); <u>United States v. Elkins</u>, 16 F.3d 952, 953-54 (8th Cir. 1994) ("We reject the invitation to conclude that placing a knife <u>against the throat of an innocent bystander</u> to facilitate cooperation with a robbery demand is not 'use' of a dangerous weapon for purposes

18

of section 2B3.1(b)(2).") (emphasis added); <u>United States v. Johnson</u>, 931 F.2d 238, 240 (3d Cir. 1991) ("[W]hen a defendant did not simply point or wave about a firearm, but actually leveled the gun <u>at the head of the victim at close range</u> and verbalized a threat to discharge the weapon, the conduct is properly classified as 'otherwise using' a firearm.") (emphasis added); <u>see also</u> <u>United States v. De La Rosa</u>, 911 F.2d 985, 993 (5th Cir. 1990) (finding that brandishing of firearm combined with use of threats "operates to bring this conduct within the orbit of 'otherwise used.'"). <u>But see</u> <u>United States v. Matthews</u>, 20 F.3d 538, 554 (2d Cir. 1994) (holding that fact that robbers issued explicit threats while "brandish[ing] and point[ing their firearms] menacingly" was not sufficient to constitute"otherwise use" of the firearm).[6] Here, in addition to the fact that both of Cover's co-conspirators held various persons at gunpoint, <u>see</u> PSI ¶ 4, it is undisputed that the unidentified co-conspirator "escaped by carjacking and kidnaping an unsuspecting motorist who was outside the bank. The victim was held at gunpoint on the passenger side floorboard of the vehicle as the unidentified individual fled the scene" PSI ¶ 6. We hold that the action of the unidentified co-

---

[6]  While it is clear that the Second Circuit disagrees with the line of cases that find that specific threats or pointing of weapons is enough to finding "otherwise use" rather than mere brandishment of the weapons, it is not clear that it would disagree with our conclusion that the unidentified co-conspirator's use of a firearm to carjack and abduct a victim at gunpoint constitutes "otherwise use."  <u>See</u> <u>Matthews</u>, 20 F.3d at 554 (suggesting that the court might find "that the expressed threat to shoot one person in order to extort action from another goes beyond . . . 'brandishing.'").

conspirator in carjacking and abducting a motorist at gunpoint is sufficient to constitute "otherwise use" of his firearm.  Accordingly, we reverse the district court's application of the § 2B3.1(b)(2)(C) five-point enhancement and remand for application of the § 2B3.1(b)(2)(B) six-point enhancement.

## III.  Conclusion

We AFFIRM Cover's sentence as to all aspects other than the § 2B3.1(b)(2)(C) enhancement.  We REVERSE the application of the § 2B3.1(b)(2)(C) and REMAND solely for the imposition of a § 2B3.1(b)(2)(B) six-level enhancement in accordance with this opinion.