[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-16207
Non-Argument Calendar

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**June 24, 2005**
**THOMAS  K. KAHN**
**CLERK**

D.C. Docket No. 03-00243-CR-2-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANKLIN CLIFF,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Georgia

_____

**(June 24, 2005)**

Before TJOFLAT, DUBINA and FAY, Circuit Judges.

PER CURIAM:

Franklin Cliff appeals his 40-month sentence, following resentencing, for

committing bank robbery, in violation of 18 U.S.C. §§ 2, 2113(a).  Cliff argues on

appeal that the district court erred in enhancing his offense level by two levels, pursuant to U.S.S.G. § 2B3.1(b)(2)(F), based on the court's determination that it was reasonably foreseeable to Cliff that his codefendant would make a threat of death while committing the bank robbery. For the reasons set forth more fully below, we affirm Cliff's sentence.

A federal grand jury returned a six-count indictment against Cliff and his codefendant, Jamal Christopher Mitchell, charging them both in Count I of the indictment with taking, by force, violence, and intimidation, United States currency, belonging to the Wachovia Bank in Douglasville, Georgia, in violation of 18 U.S.C. §§ 2, 2113(a). Without the benefit of a plea agreement, Cliff pled guilty to this offense.

A probation officer subsequently prepared a presentence investigation report ("PSI"), which included that, during the robbery, Cliff remained in a truck while Mitchell entered the bank, approached a bank teller, and asked for a piece of paper. Mitchell then announced to the teller: "This is a robbery. Give me the Cash, I've got a gun." Mitchell also jumped on top of the teller's counter; removed cash and a dye pack from the teller's cash drawer; and ran from the bank, taking $1,548 in cash with him. As Mitchell was running away from the bank, the dye pack exploded. Moreover, after someone spotted Mitchell jump into the truck

2

Cliff was driving, a police officer stopped this vehicle, placed Cliff and Mitchell under arrest, and recovered from the vehicle $1,500 in dye-colored cash. During a post-arrest interview, Cliff conceded that he knew that Mitchell was planning on robbing the Wachovia Bank.

The probation officer set Cliff's base offense level at 20, pursuant to U.S.S.G. § 2B3.1(a). The officer also recommended that this offense level be adjusted (1) upwards two levels, pursuant to U.S.S.G. § 2B3.1(b)(1), because a financial institution's property was taken; (2) upwards two levels, pursuant to U.S.S.G. § 2B3.1(b)(2)(F), because a threat of death was made; and (3) downwards three levels, pursuant to U.S.S.G. § 3E1.1, for acceptance of responsibility. With an adjusted offense level of 21, and a criminal history category of II, Cliff's guideline range was 41 to 51 months' imprisonment.

Cliff's only objection that affected his guideline calculations was to the recommendation that he receive the two-level § 2B3.1(b)(2)(F) enhancement. Cliff argued that this enhancement should not apply to his guideline sentence because there was no "express threat of death." The probation officer responded that, under § 2B3.1(b)(2)(F), a defendant does not have to state expressly his intent to kill the victim.

At Cliff's first sentencing hearing, the district court adopted all of the PSI's findings, except for the contested § 2B3.1(b)(2)(F) enhancement. Cliff then argued that (1) he acted merely as the driver in the instant offense, and (2) Mitchell did not actually carry a firearm. Cliff also asserted that he only stated during his post-arrest statement to law enforcement officers that Mitchell had told him that (1) Mitchell had robbed banks in the past, (2) this criminal conduct was "easy to do," and (3) he usually just wrote a note. Cliff concluded that he had no reasonable expectation that Mitchell would use a threat of death in committing the instant bank robbery. The government responded that (1) a reasonable bank teller would have thought that his or her life was in danger in the instant case, and (2) any accessory to a bank robbery should have a reasonable expectation that codefendants will use the threat of death.

The court determined that, "given the facts and circumstances surrounding what occurred in the bank during the robbery," the bank teller reasonably believed that her life was in danger during the robbery at issue. The court, therefore, concluded that the § 2B3.1(b)(2)(F) enhancement was applicable. After resolving a dispute over Cliff's criminal history, the court found that Cliff had an offense level of I, instead of II, and a resulting guideline range of 37 to 46

months' imprisonment. The court ultimately sentenced Cliff to 40 months' imprisonment, 3 years' supervised release, and a $100 special assessment fee.

On appeal, Cliff argued that (1) Mitchell's statement to the bank teller did not constitute a threat of death, and (2) Cliff did not know, and could not have reasonably foreseen, that Mitchell would make this statement while robbing the bank. See United States v. Cliff, No. 03-16113 at 2 (11th Cir. 2004) (unpub.). We determined that, although Mitchell made a death threat, the district court only could impute this conduct to Cliff in certain circumstances, including in "the case of a jointly undertaken criminal activity." Id. at 3-4. Moreover, we determined that, although a defendant may be sentenced with reference to "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken activity," the district court imposed the § 2B3.1(b)(2)(F) enhancement without making such a factual finding. Id. at 4.

We, therefore, concluded that the district court improperly applied this enhancement, and we vacated and remanded Cliff's sentence for resentencing consistent with our opinion. Id. at 4-5. We, however, clarified that we were not deciding whether Cliff reasonably could have foreseen Mitchell's threat of death. Id. at 4. We also cautioned that we never had concluded "that every getaway car

5

driver reasonably foresees the robber's using a death threat," because that determination, instead, depended on the nature of the offense.  Id. at 4 n.1.

On remand, the government proffered the following facts.[1]  During Cliff's post-arrest statement, Cliff admitted that he (1) had known Mitchell for approximately one month prior to the instant robbery; (2) knew that Mitchell previously had robbed a bank; (3) knew that Mitchell was wanted for bank robberies, including four or five robberies in the Atlanta area and eight or nine robberies in Baltimore, Maryland, all of which involved the use of notes; (4) had seen on television a wanted poster for Mitchell; and (5) had heard Mitchell say that robbing banks was easy and could be done merely by writing a note.  The government argued that, although Cliff did not state during his post-arrest statement whether Mitchell told him that he would use a note in the instant case, it was reasonable to infer from the facts of Mitchell's previous robberies that a note threatening death would be used.

Cliff responded that, because the government had failed to produce evidence showing that Cliff knew that Mitchell used firearms as part of his prior

---

[1]  This factual proffer, which came from a report drafted by Special Agent Neil Rabinovitz, an agent with the Federal Bureau of Investigations, was offered in lieu of the agent's testimony, but with the officer present and available for cross-examination.  On questioning from the court, Cliff responded that he had no objection to the government offering the proffer, and that he did not wish to cross-examine this agent.

robberies, the court should not infer that Cliff reasonably could foresee that a threat of death would be made in the instant case. Cliff also asserted that the government failed to recover a firearm from either Mitchell's person, or the truck Cliff was driving, and that no actual note was used in the instant case. The government replied that, although it did not have direct evidence that Mitchell told Cliff that he used a firearm when he committed his prior robberies, this fact could be inferred reasonably from the other evidence it presented.

The court granted the § 2B3.1(b)(2)(F) enhancement, based on its determination that the government had shown by a preponderance of the evidence that Mitchell and Cliff had engaged in jointly undertaken criminal activity, and that it was reasonably foreseeable that Mitchell would use the threat of death in connection with the instant robbery, either by way of a note or by indicating verbally that he had a gun. In making this determination, the court explained that (1) Cliff was aware that Mitchell was a bank robber who had robbed numerous banks; (2) Cliff had seen on television a wanted flier for Mitchell; and (3) Mitchell had told Cliff how to rob a bank, including using a note. Because this determination did not change the calculation of Cliff's guideline range, the court reimposed its previous sentence.[2]

---

[2] The court also issued a written order, containing these same factual findings.

As discussed above, Cliff argues on appeal that the court clearly erred in imputing Mitchell's conduct of making a death threat during the robbery to Cliff, and in adjusting his offense level under § 2B3.1(b)(2)(F), because this conduct was not reasonably foreseeable to him. Cliff asserts that, although the court correctly determined that he knew that Mitchell was going to commit a bank robbery, the government produced no direct evidence showing that Cliff and Mitchell discussed making a threat of death. Cliff also contends, without citing to the record, that he knew that Mitchell did not have a gun. Moreover, Cliff argues that, although he knew that Mitchell committed prior robberies using notes, and that Mitchell was wanted for "bank robbery," the government failed to produce evidence showing that Cliff knew that these former notes contained death threats.

As a preliminary matter, Cliff neither argued in the district court, nor in his appeal brief, a constitutional challenge to the calculation of his sentence under the United States Sentencing Guidelines ("federal guidelines"). As such, any possible claim based on the U.S. Supreme Court's decisions in Blakely v. Washington, 542 U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), has been abandoned. See United States v. Dockery, 401 F.3d 1261, 1262-63 (11th Cir. 2005) (holding that appellant abandoned his Booker claim on appeal by not raising a timely

8

constitutional challenge to his sentence in his initial brief); see also United States

v. Lebovitz, 401 F.3d 1263, 1265 n.1 (11th Cir. 2005) (declining to address impact

of Booker where appellant did not raise a constitutional challenge to the

application of the federal guidelines to his case); United States v. Grant, 397 F.3d

1330, 1331 n.2 (11th Cir. 2005) (same). The parties also have not preserved this

error by jointly conceding error. See United States v. Dacus, No. 04-15319, slip

op. at 2112-13 (11th Cir. May 3, 2005) (concluding that, although we ordinarily

refuses to consider an argument not raised in the appellant's initial brief, we would

consider a newly-raised Booker error because both parties, in their response and

reply briefs, had joined the issue without objection).

Furthermore, we recently determined that, although the Supreme Court's

decision in Booker established a "reasonableness" standard for the sentence finally

imposed on a defendant, Booker does not alter our review of the application of

the federal guidelines. United States v. Crawford, No. 03-15136, slip op. at 2075-

76 (11th Cir. May 2, 2005). We review for clear error a district court's

determination of reasonable foreseeability. United States v. Pringle, 350 F.3d

1172, 1177 (11th Cir. 2003). We "will not find clear error unless our review of

the record leaves us 'with the definite and firm conviction that a mistake had been

9

committed.'" United States v. White, 335 F.3d 1314, 1319 (11th Cir. 2003) (internal quotation omitted).

Section 2B3.1 of the federal guidelines provides that, if a threat of death was made during a robbery, the defendant's base offense level should be increased by two levels. U.S.S.G. § 2B3.1(b)(2)(F). The commentary to this guideline includes that a "threat of death" "may be in the form of an oral or written statement, act, gesture, or combination thereof." U.S.S.G. § 2B3.1, comment. (n.6). The defendant, therefore, "does not have to state expressly his intent to kill the victim in order for the enhancement to apply." Id. Accordingly, in United States v. Murphy, 306 F.3d 1087 (11th Cir. 2002), we determined that a defendant made a § 2B3.1(b)(2)(F) "threat of death" by giving a bank teller a note stating that the teller had ten seconds to give the defendant money, and that the defendant had a gun. Id. at 1089-90; see also United States v. Petho, No. 04-15412, manuscript op. at 4-5 (11th Cir. May 18, 2005) (rejecting defendant's argument that we should overrule our decision in Murphy, and hold that a note indicating the presence of a weapon does not constitute a threat of death).

Moreover, "'in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts

10

and omissions of others in furtherance of the jointly undertaken criminal activity,'

should be taken into account in calculating the defendant's appropriate sentence."

Pringle, 350 F.3d 1172, 1175-76 (11th Cir. 2003) (quoting U.S.S.G.

§ 1B1.3(a)(1)(B)).  Thus, an act may be imputed from one co-conspirator to

another, pursuant to § 1B1.3(a)(1)(B), provided the conduct was (1) "reasonably

foreseeable," and (2) "in furtherance of the jointly undertaken criminal activity."

United States v. Gallo, 195 F.3d 1278, 1281 (11th Cir. 1999).

The government must show "reasonable foreseeability"—the only § 1B1.3

element at issue here—by the preponderance of the evidence.  United States v.

Cover, 199 F.3d 1270, 1274 (11th Cir. 2000).[3]  The government, however, need

not show that the defendant expressly agreed to his codefendant's acts.  Id. at 1275

(holding that "reasonably foreseeable" has never been limited to acts that were

expressly agreed to by the co-conspirators); see also U.S.S.G. § 1B1.3, comment.

(n.2) ("the criminal activity that the defendant agreed to jointly undertake, and the

reasonably foreseeable conduct of others in furtherance of that criminal activity,

are not necessarily identical").  Instead, "an act is reasonably foreseeable if it is a

---

[3] The district court, in turn, must make factual findings on whether a § 2B3.2(b)(2) enhancement is applicable.  See Cover, 199 F.3d at 1274.  Here, unlike after the first sentencing hearing, the parties do not argue, and the record does not reflect, that the district court's findings on this enhancement were inadequate.

necessary or natural consequence of the unlawful agreement." Cover, 199 F.3d at 1275 (internal marks and quotations omitted).

In the instant case, the evidence included that Cliff (1) had known Mitchell for approximately one month prior to the robbery; (2) knew that Mitchell previously had robbed a bank; and (3) knew that Mitchell was wanted for bank robberies, including four or five robberies in the Atlanta area and eight or nine robberies in Baltimore, Maryland, which all involved the use of notes. Mitchell also had explained to Cliff how to commit robberies, including that robbing banks was easy and could be done merely by writing a note. Thus, although the government failed to show that Cliff expressly agreed to Mitchell's use of a threat of death in committing the robbery, it was reasonably foreseeable, from Mitchell's conduct during his past robberies, that this use was "the natural consequence of [their] unlawful agreement." See Cover, 199 F.3d at 1275. It is certainly reasonably foreseeable that notes used in this type of criminal activity would include a threat of death intended to intimidate the bank employee. Additionally, to the extent Cliff is arguing, without citing to the record, that Mitchell's use of a firearm was not reasonably foreseeable because Cliff knew that Mitchell did not have a firearm, he has failed to cite to authority to support such an argument, or to

12

show whether or not he knew that Mitchell had a firearm during all of his prior robberies.

Accordingly, we conclude that the district court did not clearly err in determining that a § 2B3.2(b)(2)(F) enhancement was applicable.  We, therefore, affirm Cliff's 40-month sentence.

AFFIRMED.

TJOFLAT, Circuit Judge, concurring:

I concur fully in the court's opinion and judgment. I write separately simply to emphasize in this post-<u>Blakely/Booker</u> era that Cliff was resentenced on November 4, 2004, four months after the Supreme Court decided <u>Blakely</u>. At that time, Cliff raised no Sixth Amendment objection to the district court's determination of the facts that gave rise to the U.S.S.G. § 2B3.1(b)(2)(F) sentence enhancement; nor did he object to the court's treatment of the Guidelines as mandatory rather than advisory. Finally, Cliff has not asked us to notice plain error in the district court's application of § 2B3.1(b)(2)(F) and its treatment of the Guidelines as mandatory. Hence, the sole question in this appeal is whether the court erred in enhancing Cliff's sentence under § 2B3.1(b)(2)(F).