[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-11352
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 8, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00313-CR-RWS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ZATAR HUNT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 8, 2005)

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Zatar Hunt appeals his 86-month sentence, imposed after he pled guilty to

being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). On

appeal, Hunt argues that, in light of <u>United States v. Booker</u>, 543 U.S. ___, 125 S.

Ct. 738, 160 L. Ed. 2d 621 (2005), the district court violated his Sixth Amendment rights by enhancing his sentence, pursuant to U.S.S.G. § 2K2.1(b)(5), based on facts that were not charged in the indictment, admitted at the plea colloquy, or proven to a jury beyond a reasonable doubt. Hunt also asserts that the district court erred by imposing his sentence pursuant to a mandatory application of the Sentencing Guidelines.

Because Hunt preserved his arguments in the district court, our review is <u>de novo</u>, but we will reverse and remand only for harmful error. <u>See</u> <u>United States v. Paz</u>, 405 F.3d 946, 948 (11th Cir. 2005). Preserved constitutional and statutory errors under <u>Booker</u> are reviewed for harmless error. <u>See</u> <u>United States v. Mathenia</u>, 409 F.3d 1289, 1291-93 (11th Cir. 2005). Constitutional error is "harmless" when the government can show beyond a reasonable doubt that the error did not contribute to the defendant's ultimate sentence. <u>Id.</u> at 1291. Statutory error is reviewed under a less demanding test: whether a review of the proceedings, as a whole, shows that the error either did not affect the sentence or had only a slight effect. <u>Id.</u> at 1291-92. "If one can say with fair assurance that the sentence was not substantially swayed by the error, the sentence is due to be affirmed even though there was error." <u>Id.</u> at 1292 (internal marks omitted). The government has the burden of proof under both standards. <u>Id.</u>

After thorough review of the record, as well as careful consideration of the parties' briefs, we find no Booker constitutional error. However, we find Booker non-constitutional, or statutory, error. Because the government has not met its burden to show harmlessness, we vacate and remand Hunt's sentence for resentencing, pursuant to the discretionary Sentencing Guidelines scheme now required by Booker.

The facts pertinent to Hunt's Booker claim are straightforward. According to the pre-sentence investigation report ("PSI"), on May 3, 2004, the Atlanta Police Department ("APD") arrived at Hunt's residence in response to a call that a person had been shot. The victim, an eight-year-old male, was transported to a hospital and later died of a single gunshot wound to the chest.

APD officers executed a search warrant at Hunt's residence and discovered a Smith & Wesson, .38 caliber, six-shot revolver, and a Davis Industries, .38 caliber pistol, inside a desk drawer in the front room of the residence. During an interview with the investigating APD officers, Hunt said during the morning of May 3, 2004, his brother came to his house and left the Smith & Wesson revolver on a table. According to Hunt, he put the loaded gun in the same drawer where a television and Playstation video game console were located. Hunt also explained that approximately two months before the shooting incident, his girlfriend brought

3

another pistol to his house and he had placed it in the same drawer where the television and Playstation were located.

The investigation revealed that on the morning of the shooting, while Hunt and a female friend were in the bathroom of the house, engaging in sexual intercourse, the friend's children, who were five- and eight-years old, remained in the living room and played video games. At some point, the five-year-old removed the Smith & Wesson revolver from the drawer and shot his eight-year-old brother. Hunt and the female heard the gunshot and ran to the living room, at which point they saw the wounded child laying on a mattress on the floor. Hunt then proceeded to place the revolver back in the desk drawer, which is where APD officers later recovered it during the search of his residence. Based on his prior conviction in Fulton County Superior Court for possession of cocaine, Hunt was arrested for being a convicted felon in possession of a firearm.

Hunt initially pled not guilty to the charge, but then executed a plea in which he agreed to plead guilty to Count One of the indictment. During the change-of-plea hearing, the government stated that, if the case went to trial, it would be able to prove the following: (1) on May 3, 2004, Hunt had in his possession a .38 caliber Smith & Wesson firearm as well as a .380 caliber Davis Industries firearm; (2) a female companion arrived at Hunt's apartment on that morning with her two

children, a five-year-old and an eight-year-old; (3) the children stayed in the living room playing video games while Hunt and the female retreated to the bathroom to engage in sexual intercourse; (4) while in the bathroom, the woman's five-year-old son shot his brother with the Smith & Wesson revolver; (5) the child later died from a gunshot wound to the chest "due to involuntary manslaughter"; (6) the children had been to Hunt's residence on two or three other occasions, and Hunt knew the children were playing video games on the same desk where the gun was located; (7) Hunt was arrested by the APD and charged with involuntary manslaughter, reckless conduct, and being a felon in possession of a handgun; and (8) Hunt had been convicted in 2000 of possession of cocaine.

Notably, Hunt did not object to the government's recitation of the facts and, when specifically questioned by the district court, admitted that (1) on May 3, 2004, he had in his possession both the Smith & Wesson revolver and the Davis Industries firearm; and (2) he had been convicted in 2000 for possession of cocaine. The district court accepted Hunt's plea and adjudged him guilty of Count One of the indictment.

The PSI assigned Hunt a base offense level of 20, pursuant to U.S.S.G. § 2K2.1(a)(4)(A), because he committed the instant offense after sustaining a felony conviction involving a controlled substance. Hunt's offense level was increased by

four levels, pursuant to U.S.S.G. § 2K2.1(b)(5), because he possessed a firearm in connection with another felony offense (manslaughter). Finally, Hunt received a 3-level reduction, pursuant to U.S.S.G. §§ 3E1.1(a) and (b), based on his acceptance of responsibility. With an adjusted offense level of 21 and a criminal history category VI (based on 18 criminal history points), Hunt's Guidelines sentencing range of imprisonment was 77 to 96 months.

Hunt objected to the four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(5), arguing that the enhancement did not apply because he did not commit the offense of involuntary manslaughter. In addition, Hunt objected to the enhancement based on the Supreme Court's decision in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Hunt asserted that the enhancement was improper because the involuntary manslaughter charge was not included in the indictment or proven to a jury beyond a reasonable doubt.

At the sentencing hearing, the government called Special Agent Eric Degree, of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, who described Hunt's apartment. Degree stated that the only furniture in the front room where the eight-year-old was shot was a mattress on the floor and a small one-drawer desk. The one-drawer desk was within arms' length of the mattress that had a television and Playstation video game console stacked on top of it.

The district court noted that it could not apply the four-level enhancement unless Hunt could have been charged and convicted of involuntary manslaughter under the applicable state statute, O.C.G.A. § 16-5-3. The court stated that the unlawful act at issue was Hunt's criminal negligence – "the fact of having a loaded gun in a room with two unsupervised children of the ages five and eight." After hearing argument and reviewing Georgia case law on the issue, the court found, by a preponderance of the evidence, that Hunt's criminal negligence would support a conviction for involuntary manslaughter under Georgia law. Accordingly, the district court overruled Hunt's Blakely objection to the four-level enhancement.

The district court adopted the calculations set forth in the PSI, assigned Hunt a base offense level of 21 and a criminal history category of VI. Before imposing Hunt's sentence, the district court commented:

> To me there is a balance to be struck, and to me the proper sentence falls - - I don't think because there is a loss of life here and it was so needless, I don't think that I can go to the bottom of the range. By the same token, the fact of your criminal history, the fact that this is an enhancement on a possession charge causes me to feel that the very top is not necessarily the correct place either; and, therefore, I'm going to fall toward the middle of the range.

Accordingly, the district court sentenced Hunt to 86 months' imprisonment, which was the middle of the Guidelines' range. This appeal followed.

In Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed. 435

7

(2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S.Ct. at 2362-63. Thereafter, in Blakely, the Court held that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. . . . In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Blakely, 542 U.S. at ___, 124 S.Ct. at 2537.

Finally, in Booker, the Court found "no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue" in Blakely. Booker, 543 U.S. at ___, 125 S.Ct. at 749. The Court, therefore, held that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. Id. at ___,125 S.Ct. at 749-51. In extending its holding in Blakely to the Guidelines, the Court explicitly reaffirmed its rationale in Apprendi that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury

8

verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. at ___, 125 S. Ct. at 756.

There are two types of Booker error: (1) constitutional error, which is a violation of the Sixth Amendment and occurs when a district court enhances a defendant's sentence based on judicial fact finding under a mandatory sentencing regime, and (2) statutory error, which takes place when the district court applies the Guidelines in a mandatory fashion. United States v. Camacho-Ibarquen, 410 F.3d 1307, 1316 (11th Cir. 2005).

There was no constitutional error in this case. The district court imposed a 4-level upward adjustment under U.S.S.G. § 2K2.1(b)(5) for possessing a firearm in connection with another felony offense (involuntary manslaughter). Although Hunt contested whether his conduct satisfied the statutory elements of manslaughter under the applicable Georgia statute, he did not contest the facts underlying the enhancement, neither when the government made its factual proffer at the plea colloquy nor at the sentencing hearing. In imposing sentence, the district court took into consideration only facts that were admitted by Hunt and found those facts satisfied the elements of the underlying Georgia manslaughter statute.[1] Accordingly, the district court did not commit Booker constitutional error.

---

[1] Georgia's involuntary manslaughter statute provides, inter alia: "A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death

9

As for Booker non-constitutional, or statutory, error, the government concedes there was error but argues the error was harmless in light of the district court's imposition of a sentence in the middle of the Guidelines range. We disagree.

Based on our own review of the record, with particular attention to the sentencing transcript, the record is ambiguous as to what sentence the district court would have imposed had it applied the Guidelines in an advisory manner. Accordingly, because "[w]e simply do not know what the sentencing court would have done," the government has not met its burden to show that the error was harmless, and we must vacate Hunt's sentence and remand to the district court for resentencing consistent with the remedial holding of Booker. See United States v.

---

of another human being without any intention to do so by the commission of an unlawful act other than a felony." O.C.G.A. § 16-5-3(a). The Georgia Supreme Court recently reiterated that "a defendant who handles a gun in such a way as to accidentally cause the death of another human being, albeit without any intention to do so, has necessarily committed the misdemeanor of reckless conduct, [O.C.G.A. § 16-5- 60(b)], and is not, therefore, engaged in the commission of a lawful act . . . ." Reed v. State, 610 S.E.2d 35, 40 (Ga. 2005) (quoting Cook v. State, 292 S.E.2d 844 (Ga. 1982)).

After de novo review, we find no legal error in the district court's conclusion that, based on the facts admitted by Hunt, the § 2K2.1(b)(5) enhancement applied. See United States v. Cover, 199 F.3d 1270, 1274 (11th Cir. 2000) ("In sentencing guidelines cases, we review for clear error a district court's factual findings and review de novo the district court's application of law to those facts."); see also United States v. Petho, 409 F.3d 1277, 1279-80 n. 1 (11th Cir. 2005) (rejecting Booker constitutional challenge to district court's imposition of U.S.S.G. § 2B3.1(b)(2)(F) enhancement for making a threat of death in the course of robbery of a financial institution; defendant admitted underlying facts and "[t]he determinations that the bank was a financial institution and that the note constituted a threat of death were not factual findings, but legal conclusions properly made by the court").

10

Davis, 407 F.3d 1269, 1271 (11th Cir. 2005); Compare United States v. Phillips, 413 F.3d 1288, 1293 (11th Cir. 2005) (finding statutory error harmless where district court articulated alternate sentence using factors set forth in 18 U.S.C. § 3553(a) (citing Mathenia, 409 F.3d at 1292-93; Petho, 409 F.3d at 1280; United States v. Robles, 408 F.3d 1324, 1327 (11th Cir. 2005)).[2]

**VACATED AND REMANDED**.

---

[2]We note that the district court correctly calculated Hunt's Guidelines range. See United States v. Crawford, 407 F.3d 1174, 1178-79 (11th Cir. 2005) (stating after Booker, district courts must consult the Guidelines and "[t]his consultation requirement, at a minimum, obliges the district court to calculate correctly the sentencing range prescribed by the Guidelines"). We do not mean to imply by our holding that on remand the district court must first impose a lesser sentence. Rather, on remand the district court is required to sentence Hunt according to Booker and its admonition to consider the properly calculated Guidelines range and "other statutory concerns as well, see [18 U.S.C.] § 3553(a) (Supp.2004)." 125 S. Ct. at 757.