[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-13406

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 27, 2005
THOMAS K. KAHN
CLERK

D.C. Docket No. 01-00126-CR-WTM-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DORIAN GRANT,

Defendant-Appellant..

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(January 27, 2005)**

Before CARNES, HULL and HILL, Circuit Judges.

HILL, Circuit Judge:

This case is one of first impression in this circuit. It involves the weight of drugs used in re-sentencing the defendant, Dorian Grant, in a drug conspiracy.

Grant pled guilty to one count of conspiracy to possess with intent to distribute and conspiracy to distribute 10 grams or more of a 'mixture or substance' containing a detectable amount of lysergic acid dietyhlamide (LSD) in violation of 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(v), and 846.[1] The LSD that Grant and his co-conspirators trafficked in was in liquid form.

The district court sentenced Grant to 108 months' imprisonment. Subsequently, that sentence was vacated and Grant was sentenced to 54 months' imprisonment.

Grant now appeals his re-sentencing.[2] We affirm the judgment of the district court.

## I. BACKGROUND

---

[1] In return for Grant's plea, the government agreed to dismiss count 2 of the indictment (possessing LSD with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)). At his initial sentencing hearing, the district court informed Grant that the maximum statutory penalty it could impose would be a sentence of imprisonment of "not less than ten years nor more than life." Grant acknowledged to the court that he understood.

[2] Grant has not contended either in district court or this court that the *Apprendi/Blakely/Booker* line of decisions affect the validity of his sentence. *Apprendi v. New Jersey*, 120 S.Ct. 2348 (2000); *Blakely v. Washington*, 124 S.Ct. 2531 (2004); *United States v. Booker*, 125 S.Ct. 738 (2005).

*A. Factual Background*

The facts are not in dispute. The LSD distributed by college senior Grant and his co-conspirators was contained in water. The weight of the pure LSD alone was 0.1263 grams, the equivalent of 2526 dosage units or "hits." The aggregate weight of the water and the pure LSD was 103.7 grams (liquid LSD), or approximately one-third of the liquid contents found in a soda can.

*B. Procedural Background*

*1. Initial Sentencing*

Grant's indictment charged, and Grant pleaded guilty to, a count containing a specific drug quantity, i.e., 10 grams or more of a mixture or substance containing a detectable amount of LSD. Accordingly, Grant faced a statutory minimum sentence of 10 years. Sections 841(b)(1)(A)(v) and 846.[3] Using the December 16, 2000, edition of the sentencing guidelines manual, the probation officer, in his presentence investigation report (PSI), attributed 103.7 grams of LSD to Grant, the weight of the liquid LSD. Grant did not object to the PSI.[4]

_____

[3] Section 841(b)(1)(A)(v) reads in part: "[i]n the case of a violation of subsection (a) of this section involving . . . 10 grams or more of a mixture or substance containing a detectable amount of [LSD] . . . . such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . ."

[4] Based upon this calculation, the maximum statutory penalty Grant faced was imprisonment for not less than ten years and not more than life; not more than a $4,000,000 fine; and at least five years' supervised release. His projected guideline sentencing range was 151 to

3

Prior to hearing, the government filed a motion for downward departure pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, for Grant's substantial assistance to authorities in investigating and prosecuting others involved in the LSD conspiracy. In response, the district court departed downwardly from the 120-month statutory minimum sentence and sentenced Grant to 108 months' imprisonment. Sections 841(b)(1)(A)(v), 846; Section 3553(e); Sections 5K1.1and 5G1.1(b).[5] He was specially assessed $100 and given five years' supervised release.

While Grant's appeal was pending, his defense counsel alerted the government and the court to a case that had been overlooked at sentencing. *See United States v. Camacho*, 261 F.3d 1071 (11th Cir. 2001), *cert. denied*, 123 S.Ct. 1940 (2003) (for sentencing guideline purposes, the weight of pure LSD alone should be used to determine a defendant's base offense level). In response, the government filed a motion for summary remand. This court construed the

---

188 months' imprisonment.

[5] U.S.S.G. § 5G1.1(b), entitled "Sentencing on a Single Count of Conviction," reads in full: "Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."

government's motion as a confession of error, vacated Grant's sentence, and remanded the case for re-sentencing.

*2. Re-sentencing*

At re-sentencing, over objections of defense counsel, the district court again found the 120-month statutory minimum sentence under Section 841(b)(1)(A)(v) to be the baseline from which to sentence Grant a second time. At hearing, the district court stated that, "[i]n the Court's opinion there's no question that liquid LSD is a *mixture* or substance containing a detectable amount of LSD, thereby triggering Section 841(b)(1)(A)(v) . . . I agree with the probation officer that the total weight of the liquid LSD solution must be used to determine the mandatory minimum sentence." (Emphasis added.)

This time the district court departed downwardly, not by twelve months, but by sixty-six months. It imposed a sentence upon Grant of fifty-four months, half his original sentence. *See* Sections 841(b)(1)(A)(v), 846; Section 3553(e); Sections 5K1.1, 5G1.1(b). Grant now appeals his re-sentencing.

## II. ISSUES PRESENTED

A. In applying the mandatory statutory minimum penalty provision, should the district court consider the weight of the liquid LSD, as "a mixture or substance

5

containing a detectable amount of LSD" under Section 841(b)(1)(A)(v), or the weight of the pure LSD alone?

B.  As the sentence first entered by the district court was twelve months below the statutory mandatory minimum, is it bound, upon remand, to consider the statutory base offense level, 120 months, or may it consider the sentencing guidelines base offense level, fifteen to twenty-one months under Section 2D1.1(c)?

## III.  STANDARD OF REVIEW

This court reviews the district court's application of the sentencing guidelines *de novo* and its findings of fact for clear error.  *Camacho*, 261 F.3d at 1073, citing *United States v. Trujillo*, 146 F.3d 838, 847 (11th Cir. 1998).

## IV.  DISCUSSION

*A.  Contentions of the Parties*

*1.  The First Issue*

*a.  Grant's Contentions as to the Weight of Liquid LSD Issue*

Grant contends that he should be sentenced to no more than fifteen to twenty-one months' imprisonment under the sentencing guidelines, based upon his criminal history, with adjustment for acceptance of responsibility.  *See Camacho*, 261 F.3d at 1074.  He argues that, 'as he was convicted of' selling .1234 grams of

pure LSD, this is the amount of drugs in which he trafficked under *Camacho*.[6]  *Id.*

He claims that in this circuit only the weight of the pure LSD alone, not the liquid

LSD, can be used in determining his sentence under the sentencing guidelines.  *Id.*

In making this argument, Grant acknowledges that the analysis set forth in

*Camacho* stopped short at the sentencing guidelines, and did not reach the drug

weight issue in the context of the penalty statute.  Nevertheless, he claims the

same result should occur.  He does this by trying to distinguish *Chapman v. United*

*States*, 111 S.Ct. 1919 (1991) and *Neal v. United States,* 116 S.Ct. 763 (1996),

from his case.

The Supreme Court held in both *Chapman* and *Neal* that LSD impregnated

into blotter paper is a 'mixture or substance' containing LSD within the meaning

of the penalty statute; therefore the weight of the carrier medium should be

included in determining the appropriate sentence for trafficking in LSD.

*Chapman*, 111 S.Ct. at 1924-26; *Neal*, 116 S.Ct. at 769.  Grant avers, however,

that neither *Chapman* nor *Neal* involved liquid LSD and should be read only in the

context of LSD mounted on a carrier medium such as blotter paper.

---

[6] Grant does not reference the plea agreement in which he pled guilty to a specific number of grams of drugs.

In essence, Grant is arguing that the LSD here was in an intermediate wholesale distribution form, unlike the retail consumer form found in *Chapman* and *Neal*. He claims it is much too bulky and much too diluted to be marketed directly to consumers.[7] It is merely two separate substances contained together in a vial, with no fixed ratio between them. He asserts that there is no enfolding, no bonding, no impregnating. Similar to clothes contained in a suitcase, or individuals confined by a courtroom, the LSD is merely encased in water, not mixed with it or in it.

### b. The Government's Contentions as to the Weight of the LSD Issue

The government avers that this is a straightforward case. The statute provides for a 10-year mandatory minimum sentence for possession with intent to distribute 10 grams or more of a mixture or substance containing a detectable amount of LSD. Section 841(b)(1)(A)(v). Insofar as the penalty statute is concerned, Grant pled guilty to conspiracy to distribute a specific amount of drugs, i.e., 10 grams or more. *Id*.

Although the facts in *Chapman* involved LSD mounted on a carrier medium, i.e., blotter paper, the government argues that the Supreme Court

---

[7] Grant concedes that consumers can get high by drinking liquid LSD, although this is not the way LSD is typically marketed.

nevertheless defined 'mixture' according to its plain and ordinary terms. *Chapman*, 111 S.Ct. at 1925-26. In the case of liquid LSD, the two components are intermingled, although they can perhaps be regarded as having a separate existence. *Id*. (where Webster's Third New International Dictionary 1449 (1986) defines a "mixture" to include "a portion of matter consisting of two or more components that do not bear a fixed proportion to one another and that however thoroughly commingled are regarded as retaining a separate existence").

The government claims that what Grant distributed, what he was charged with, and what he pled guilty to, meet the statutory criteria for the imposition of the ten year mandatory minimum sentence. In addition, the government argues that it is the weight of the liquid LSD that should be considered, not the weight of the pure LSD, because the weight of the pure LSD is so minuscule that it does not adequately reflect the seriousness of the crime, i.e., 2526 drug-induced highs. *See Camacho*, 261 F.3d at 1075, citing *United States v. Turner*, 59 F.3d 481, 486 (4th Cir.1995)(quoting Section 2D1.1(c), comment. (n.16)).

In support of its argument that the district court acted properly in this case, the government cites case law from other circuits holding that liquid LSD is a 'mixture or substance' for purposes of the statutory mandatory minimum sentence, and that the guidelines range is trumped by Section 5G1.1(b). *See United States v.*

9

*Morgan*, 292 F.3d 460, 461 (5th Cir.), *cert. denied*, 123 S.Ct. 45 (2002)(vacating guidelines sentence in liquid LSD case and remanding for imposition of 10-year minimum sentence mandated by Section 841(b)(1)(A)(v)); *see also United States v. Keresztury*, 293 F.3d 750, 759 (5th Cir. 2002)(following *Morgan* in liquid LSD case); *United States v. Ingram*, 67 F.3d 126, 129 (6th Cir. 1995)(in pre-*Neal* liquid LSD case, directing district court to apply mandatory minimum sentence on remand if guidelines range is less); *cf. Turner*, 59 F.3d at 491-92 (in pre-*Neal* liquid LSD case suggesting that district court consider on remand whether statutory minimum sentence under Section 841(b)(1) and Section 5G1.1(b) override otherwise applicable guidelines range).

    2.  *The Second Issue*

        a.  *Grant's Contentions to the Vested Downward Departure at Re-sentencing Issue*

Grant claims that the district court erred in finding that Section 5G1.1(b) applied upon remand.  Citing no authority, he claims that it does not apply to cases in which the defendant has already been granted a downward departure from the statutory minimum.

Where ordinarily, Grant claims, Section 5G1.1(b) trumps the otherwise applicable guidelines range of Section 2D1.1(c), substituting the statutory

10

minimum of ten years, it does not apply on remand once a defendant has already earned a downward departure under Section 3553(e) and Section 5K1.1. Grant concedes that he is surprised to find no decisional law squarely addressing this issue.

        *b. The Government's Contentions as to the Vested Downward Departure at Re-Sentencing Issue*

In rebuttal of Grant's argument that he has a vested right to have no statutory mandatory minimum sentence be applied on remand, the government cites *United States v. Stinson*, 97 F.3d 466 (11th Cir. 1996). *Stinson* holds that an original sentence is wiped away by a vacatur, leaving the district court with a clean slate upon which to write at a defendant's re-sentencing. *Id.* at 469.

The government does concede that Grant had the right to have a Section 5K1.1 motion filed on his behalf at re-sentencing. One was filed. In response, the district court halved Grant's original sentence of 108 months to 54 months.

*B. The First Issue - The Weight of the LSD*

        *1. The Statutes and the Sentencing Guidelines*

Section 841(b)(1)(A)(v) provides for a mandatory minimum of 10 years' imprisonment for a violation of subsection (a) [making it unlawful to knowingly or intentionally manufacture, distribute, dispense, or possess with intent to

manufacture, distribute, or dispense, a controlled substance] involving "10 grams or more of a mixture or substance containing a detectable amount of [LSD]." The sentencing guidelines parallel the statutory language and requires the base offense level to be determine based upon the weight of a "mixture or substance containing a detectable amount of" LSD. Section 2D1.1(c).

*2. Supreme Court Cases and Sentencing Guidelines' Amendment 488*

In 1991, in *Chapman*, the Supreme Court held that the phrase "mixture or substance containing . . . . LSD" in Section 841(b)(1) refers to "the weight of the carrier medium upon which the drug is mounted." *Chapman*, 111 S.Ct. at 1929. Two years later, the sentencing commission promulgated an amendment to the guidelines, reducing the penalties for trafficking in carrier-mounted LSD by calculating base offense levels, not at the weight of the LSD plus carrier medium as in *Chapman*, but by using a standard dosage formula of 0.4 mg. per dose of LSD (amendment 488). *See* U.S.S.G. § 2D1.1(c), n. (H).

In 1996, in *Neal*, the Supreme Court held that, when calculating penalties under the statute, amendment 488 does not overcome *Chapman*'s definition of "mixture or substance," and principles of *stare decisis* require that it adhere to its earlier decision in *Chapman*. *Neal*, 116 S.Ct. at 766. In sum, the sentencing commission has no authority to amend the penalty statute, the guidelines'

12

calculation is independent of the statutory calculation, and the statute controls if they conflict. *Id.* at 768.[8] The sentencing commission's dose-based method cannot be squared with *Chapman*. *Id*.

### 3. Eleventh Circuit Precedent

Grant's initial sentence was vacated and remanded by this court for re-sentencing by the district court in light of *Camacho*, at that time, a case of first impression. This court held in *Camacho* that, as to the sentencing guidelines, with regard to LSD contained in a liquid solution, the weight of the pure LSD alone should be used to ascertain the appropriate base offense level. *See also Turner*, 59 F.3d 481(prior to *Neal*, in liquid LSD case, for purposes of the sentencing guidelines, only the weight of the pure LSD should be used in determining defendant's base offense level); *United States v. Ingram*, 67 F.3d 126, 128 (6th Cir. 1995); *United States v. Jordan*, 842 F.Supp. 1031, 1033-34 (M.D.Tenn. 1994)(in liquid LSD case, only the weight of the pure LSD should be used). As *Camacho*

---

[8] Counsel for Grant in this case argued before the Supreme Court in *Neal*, raising the identical issue as he does here, i.e., that, as the sentencing commission is the agency charged with interpretation of penalty statutes and expert in sentencing matters, its construction of Section 841(b)(2) should be given deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 104 S.Ct. 2778 (1984). *See Neal*, 116 S.Ct. at 766. The Supreme Court rejected this argument in *Neal*, and not surprisingly, we reject it here.

did not examine the drug weight issue in the context of the penalty statute, as is present in this appeal, this is an issue of first impression in this circuit.

### 4. Other Circuits' Precedent

Two circuits have held in liquid LSD cases that, although the weight of the pure LSD alone should be used in determining a defendant's base offense level under the sentencing guidelines, a district court could consider the weight of the liquid LSD when determining the applicability of the mandatory statutory minimum. *See Morgan*, 292 F.3d 460; *Ingram*, 67 F.3d 126. Both cases are distinguished from the case before us, as, *Morgan* was reviewed by the Fifth Circuit for plain error and *Ingram* was decided prior to *Neal*. Nevertheless we find them helpful in our discussion. *See also Keresztury*, 293 F.3d 750 (5th Cir. 2002).

### 5. The Facts Before Us

*Morgan* most closely aligns with the facts before us. Although the amount of pure LSD in *Morgan* was less than 10 grams, Morgan's guilty plea included his possessing, with intent to distribute, 10 grams or more of LSD, triggering the ten-year minimum sentence mandated by Section 841(b)(1)(A)(v). *Morgan*, 292 F.3d at 464-66. Under Section 5G1.1(b), the *Morgan* court used the statutory minimum because it was greater than the maximum sentence under the guidelines. *Id.*

(holding that the market-oriented approach used in *Chapman* warrants including the weight of the liquid solution in determining a mandatory minimum sentence).

The same is true in Grant's case. Unlike the defendant in *Camacho*, Grant's indictment charged, and Granted pleaded guilty to, a count containing a specific drug quantity, i.e., 10 or more grams. Accordingly, Grant faced a statutory minimum sentence of ten years. Section 841(b)(1)(A)(v); Section 5G1.1(b).

Similarly to the defendant in *Morgan*, Grant was informed by the district court at his initial sentencing that the maximum statutory penalty it could impose would be a sentence of imprisonment of "not less than ten years nor more than life." *See* note 1 *supra*. Grant acknowledged to the court that he understood. While Grant earnestly urges us to extend the weight of the pure LSD rationale of *Camacho* to statutory minimum cases, our reading of *Chapman* makes it clear that we may not do so. *See Chapman*, 111 S.Ct. at 1926.

We conclude that the district court should use the weight of the liquid LSD in applying Grant's statutory minimum sentence. Under *Chapman*, liquid LSD can be characterized as the carrier medium of choice at the wholesale level. *Id*. LSD on blotter paper, LSD in gel form or LSD on a sugar cube can be characterized as the carrier mediums of choice at the retail end of the distribution chain. *Id*. As the Supreme Court noted, LSD drug dealers are free to choose their

15

own carrier medium, scrutinize its weight, and, by so doing, act to minimize their potential sentences.  *Id*. at 1929 n.6.

*C. The Second Issue - Vested Downward Departure at Re-Sentencing Issue*

Without citing any authority, Grant claims that Section 5G1.1(b) does not apply to cases on remand in which the defendant has already been granted a downward departure from the statutory minimum.  The obvious invalidity of this claim may explain why it has not been heretofore asserted and decided.

Grant claims that once the district court made the decision to departure downward at his initial sentencing, it became no longer a sentencing option, but an "accomplished historical fact," and, "starting over" as if the downward departure had not yet "vested" would, in essence, punish Grant for having successfully challenged his sentence.  *See North Carolina v. Pearce*, 89 S.Ct. 2072 (1969).  His argument overlooks the fact that his resulting sentence is half that first imposed.

Grant does acknowledge that the law of this circuit, as well as that of six other circuits is, as a general matter, that when a sentence is remanded on appeal, the sentencing process commences again *de novo*.  *See Stinson v. United States*, 97 F.3d 466, 469 (11th Cir. 1996).  The vacatur of Grant's original sentence voids the sentence in its entirety and the slate is wiped clean.  *Id.*

16

The district court was free to reconstruct the sentence utilizing any of the sentence components. *Id*. (citations omitted). Here the district court properly started at the statutory minimum and departed downward. *See also United States v. Head*, 178 F.3d 1205, 1206-08 (11ᵗʰ Cir. 1999).

V. CONCLUSION

The judgment of the district court is affirmed.

AFFIRMED.