[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**March 14, 2006**
**THOMAS  K. KAHN**
**CLERK**

_____

No. 05-11618
Non-Argument Calendar

_____

D. C. Docket No. 04-00243-CR-T-17-MSS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUCAS MEDINA SANCLEMENTE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(March 14, 2006)**

Before ANDERSON, BIRCH and HULL, Circuit Judges

PER CURIAM:

Lucas Medina Sanclemente appeals his 135-month concurrent sentences

imposed after pleading guilty to (1) aiding and abetting in the possession with intent to distribute five kilograms or more of cocaine while on board a vessel, in violation of 46 App. U.S.C. § 1903(a) & (g) and 21 U.S.C. § 960(b)(1)(B)(ii), and (2) conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel, in violation of 46 App. U.S.C. § 1903(a), (g), & (j) and 21 U.S.C. § 960(b)(1)(B)(ii).  After review, we affirm.

## I. BACKGROUND

In May 2004, United States Coast Guard personnel observed a Colombian fishing vessel, the Estrella del Sur, refuel a small "go-fast" boat and provide its crew with food in the Pacific Ocean off Costa Rica.  Upon detecting the Coast Guard's presence, both vessels fled, and the Coast Guard personnel observed the crew of the go-fast boat dropping approximately thirty bales of cocaine into the ocean.  The Coast Guard recovered one of those bales, which contained 20 kilograms of cocaine.  The Coast Guard also pursued the Estrella del Sur and eventually arrested its crew, which included Sanclemente.  The Costa Rican authorities took the go-fast boat's crew into custody.  The Coast Guard and the government estimated that the go-fast boat was transporting at least 600 kilograms of cocaine.

Sanclemente pled guilty to both counts.  The presentence investigation

2

report ("PSI") assessed a base offense level of 38 under U.S.S.G. § 2D1.1(c)(1) based on the amount of drugs (600 kilograms of cocaine) that Sanclemente aided and abetted in the possession and conspired to distribute. The PSI recommended a two-level reduction under U.S.S.G. § 2D1.1(b)(7), because Sanclemente met the safety-valve criteria set forth in U.S.S.G. § 5C1.2, and a three-level reduction for acceptance of responsibility. Thus, with a total offense level of 33 and a criminal history category of I, the PSI recommended a guidelines range of 135 to 168 months.

In his written objection, Sanclemente objected to the base offense level of 38 used in the PSI. Sanclemente argued that he should be held accountable for 5 kilograms rather than 600 kilograms of cocaine because the indictment specifically provided that the amount of cocaine was five kilograms or more and he had not stipulated to an amount in excess of five kilograms.[1]

At sentencing, Sanclemente adopted the argument of one of his co-defendants, Arbelardo Cuero Arbelardo, regarding the calculation of the base offense level based on drug quantity. Arbelardo argued that the PSI improperly relied upon hearsay in Colombian police reports regarding the amount of drugs

---

[1]Sanclemente also objected to not receiving a mitigating-role reduction, and was overruled. Sanclemente does not raise this issue on appeal.

involved.  The government responded that the PSI's 600 kilogram amount was determined based on the United States Coast Guard's observation of the "go-fast" boat discarding between 30 and 40 bales and the 20 kilogram weight of the bale the Coast Guard was able to retrieve from the water.  The district court overruled Arboledo's objection, noting that the 600 kilogram figure was a conservative estimate.

The district court then adopted the factual statements in the PSI and determined that the guidelines range was 135 to 168 months.  After permitting Sanclemente to allocute, the court imposed a 135-month sentence.  The district court noted that "after considering the advisory sentencing guidelines and all of the factors identified in 18 U.S.C. § 3553(a) 1 through 7," a sentence at the low end of the guidelines range was "sufficient, but not greater than necessary to comply with the statutory purposes of sentencing."

## II.  DISCUSSION

On appeal, Sanclemente argues that at sentencing the district court failed to address the sentencing factors in 18 U.S.C. § 3553(a) and applied the guidelines in a mandatory manner.  After the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), a district court is required to take into account the advisory guidelines range and the sentencing factors set forth in §

4

3553(a). See Booker, 125 S. Ct. at 764-66; United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005); United States v. Williams, ___ F.3d ___, 2006 WL 68559, at * 3 (11th Cir. Jan. 13, 2006). Although the district court must consider § 3553(a)'s factors, "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1328-29 (11th Cir. 2005). Instead, "acknowledgment by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient under Booker." United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005).

Contrary to Sanclemente's assertions, the district court explicitly acknowledged that the guidelines were advisory and that a sentence at the low end of the guidelines range was "sufficient, but not greater than necessary to comply with the statutory purposes of sentencing." We cannot conclude on this record that the district court applied the guidelines in a mandatory fashion. In addition, the district court stated that, in imposing the 135-month sentence, it had considered the advisory guidelines range and all the factors identified in § 3553(a)(1) through (7). Accordingly, the district court satisfied its obligations under Booker. See id.[2]

_____

[2]Sanclemente was sentenced at the same time and in the same hearing as several of his co-defendants, including Arbelardo. During the hearing, the district court made certain statements in

Sanclemente also argues that the district court erred in finding that he was accountable for 600 kilograms of cocaine for purposes of determining his base offense level under the Sentencing Guidelines. We review the district court's application of the Sentencing Guidelines de novo and its findings of fact for clear error. United States v. Grant, 397 F.3d 1330, 1332 (11th Cir. 2005). After Booker, district courts must still correctly calculate the guidelines range when determining a defendant's sentence. See Crawford, 407 F.3d at 1178 (stating that, after Booker, district courts must consult the guidelines and "[t]his consultation requirement, at a minimum, obliges the district court to calculate correctly the sentencing range prescribed by the Guidelines"). If a district court applies the guidelines as advisory, nothing in Booker prohibits it from making, under a preponderance-of-the-evidence standard, additional factual findings that go beyond a defendant's admission. See United States v. Chau, 426 F.3d 1318, 1323-24 (11th Cir. 2005).

response to a request by one co-defendant to impose a sentence below the guidelines range. Sanclemente argues that these statements demonstrate that the district court imposed the guidelines in a mandatory manner. As this Court stated in Arboleda's appeal, we reject this reading of the district court's statements:

> It would have been improper for the district court to adopt a post-Booker rule that, in order to establish predictability and stability, sentences would still be within the guidelines range in its particular courtroom. Although the district court's statements arguably provide some support for defendant's contentions, we do not read the district court's statements in this case as creating any such per se rule. Rather, the district court expressly acknowledged that the guidelines were advisory and that "the sentence imposed is sufficient, but no greater than necessary to comply with the statutory purposes of sentencing."

United States v. Arboleda, No. 05-11502, slip op. at 4 n.2 (11th Cir. Dec. 21, 2005).

Here, the district court did not clearly err in finding that the go-fast boat which the Estrella del Sur refueled contained 600 kilograms of cocaine. The Coast Guard observed the crew of the go-fast boat throw overboard between 30 and 40 bales. The bale retrieved from the water by the Coast Guard contained 20 kilograms of cocaine. As the district court noted, the government's estimate of 600 kilograms was likely conservative. Thus, we affirm the district court's calculation of Sanclemente's advisory guidelines range of 135 to 168 months.[3]

For all the reasons above, we affirm Sanclemente's concurrent 135-month sentences.[4]

**AFFIRMED.**

---

[3]To the extent Sanclemente argues that the district court erred in relying upon the Coast Guard's reports because they are hearsay, this argument is without merit. See United States v. Baker, 432 F.3d 1189, 1254-55 & 1254 n.68 (11th Cir. 2005) (reaffirming post-Booker that district courts may rely on reliable hearsay to make sentencing determinations).

[4]In his brief, Sanclemente states that he "adopts the arguments, together with their supporting citations of authority, filed on behalf of co-Appellants providing they inure to the benefit of the Appellant." This statement of adoption is ineffective because it does not comply with this Court's Rule 28-1(f). Therefore, the only issues we address are those properly raised in Sanclemente's brief.